**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DELOREAN KING,

    Plaintiff,

v.                                                                             Case No. 10-12133

CITY OF DETROIT, et al.,

    Defendants.

    _____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS**

Pending before the court is Plaintiff's complaint which alleges the following counts:

- Count I, individual Defendants' violations of constitutional rights secured by the Fourth and Fourteenth Amendments and actionable under 42 U.S.C. § 1983

- Count II, City of Detroit's violations of constitutional rights secured by the Fourth and Fourteenth Amendments and actionable under 42 U.S.C. § 1983

- Count III, gross negligence

- Count IV, malicious prosecution

- Count V, false arrest and imprisonment

The first two counts allege claims under federal law; the other three counts allege claims under state law.

As a preliminary matter, the court has original jurisdiction over Plaintiff's § 1983 claims. 28 U.S.C. § 1331. Because Plaintiff's state law claims arise out of the same incident and share a common nucleus of operative fact, the court could exercise its

supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. However, the court now considers whether granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness and comity. The court determines that it is not, and will dismiss, without prejudice, all of Plaintiff's state law claims.

## I. BACKGROUND

Plaintiff Delorean King's complaint arises out of his arrest as a suspect in a shooting. (Compl. ¶ 18.) According to Plaintiff's complaint, Shannon Reed was shot in the foot on November 1, 2009. (*Id.* ¶ 12.) An eyewitness identified the shooter as a black male named "Delorean." (*Id.* ¶ 13.) During the investigation, another eyewitness gave Defendants a picture of the actual perpetrator, who was not Plaintiff but a different person also named Delorean King. (*Id.* ¶ 14, Ex. A.) Plaintiff alleges that based on this picture and the eyewitness descriptions of the shooter, Defendants knew or should have known that Plaintiff did not shoot Ms. Reed. (*Id.* ¶ 23.) Nonetheless, Plaintiff was arrested for felonious assault and felony firearm on December 23, 2009, and was arraigned on the felonious assault charge on December 24, 2009. (*Id.* ¶¶ 18-19.) Following a preliminary examination on January 7, 2010, the charges against Plaintiff were dismissed and he was released from jail. (*Id.* ¶¶ 21-24.) Plaintiff's complaint asserts a variety of federal and state claims arising out of his alleged wrongful arrest, detainment, and prosecution.

## II. DISCUSSION

A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g.*, *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131,

1133 (6th Cir. 1990). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), the Supreme Court broadly authorized federal courts to assert jurisdiction over state law claims when there existed a "common nucleus of operative fact" comprising "but one constitutional 'case,'" so long as the court had original jurisdiction over at least one claim. *Gibbs*, 383 U.S. at 725. While this decision granted district courts broad power over pendent state claims, it also recognized discretion in hearing such claims: "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. The Court stated that pendent party jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

Congress later codified the power of a federal court to hear state claims. 28 U.S.C. § 1367 (2006). Similar to the standards articulated in *Gibbs*, the statute recognizes a court's discretion to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

3

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsections two and four are applicable to this case.

Though § 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *see also* H.R. REP. NO. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis").

## A. Dismissal Pursuant to 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2006). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to

4

decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

### 1. "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

Courts generally accept that "compelling reasons for the purposes of [§ 1367] (c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557 (internal citations omitted); *see also Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *See Palmer*, 22 F.3d at 1569. Even where, as here, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems simultaneously created. The court will review the

5

federal and state claims in some detail to determine if supplemental jurisdiction should be exercised over the state claims.

### a. Applicable Legal Standards

Plaintiff raises both federal and state "wrongful arrest" claims. (Compl. ¶¶ 26, 30-35, 47-51.) A jury charged with resolving both wrongful arrest claims under § 1983 and under state law would likely be confused because different standards for probable cause govern each claim. "In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quotation marks and citation omitted). The probable cause analysis in a § 1983 wrongful arrest claim is entirely objective—the officer's beliefs and motivations are irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) ("[B]ecause the probable cause inquiry is an objective one, the officer's subjective reasons for making an arrest need not be the criminal offense for which the known facts provided probable cause."). In Michigan, the probable cause analysis has a nearly identical objective element. *See Tope v. Howe*, 445 N.W.2d 452, 458 (Mich. Ct. App.1989) ("Probable cause . . . exists when the facts and circumstances within the officer's knowledge at the time of the arrest are sufficient to a prudent person . . . to believe that the suspect has committed . . . a crime."). But the Michigan standard for probable cause also has a subjective element—"the facts must create an *actual*

*belief in the mind of the arresting officer*" that the suspect has committed a crime. *Id.* (emphasis added); *see also Card v. City of Highland Park*, No. 230449, 2003 WL 21350239, at *2 (Mich. Ct. App. June 10, 2003). Asking a jury to resolve what are essentially wrongful arrest claims under subtly different standards for probable cause would result in more lengthy jury instructions, jury confusion, and inconvenience to the parties that would not be present if the claims were tried separately. Likewise, a jury charged with resolving both the federal and state malicious prosecution claims would likely be confused because different standards govern each. *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) (stating that a district court's refusal to exercise pendent jurisdiction over the state law claims of malicious prosecution and false arrest "may have been particularly appropriate in a case such as this one where the state law claims do not turn on precisely the same standard as do the federal claims").

Similar concerns apply to Plaintiff's gross negligence claim. As discussed above, the Fourth Amendment standard for evaluating whether a search or seizure was executed reasonably is objective. *See Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 445 (6th Cir. 2006); *see also Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (in assessing the reasonableness of a search or seizure, "it is imperative that the facts be judged against an objective standard"). Gross negligence, on the other hand, focuses almost entirely on the officers' subjective mental state. "To establish a claim of gross negligence, a plaintiff must show that the defendant's conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Estate of Bolton, ex rel. Warner v. Center for Forensic*

7

*Psychiatry*, No. 288979, 2010 WL 571856, at *4 (Mich. Ct. App. Feb. 18, 2010) (citing *Kendricks v. Rehfield*, 716 N.W.2d 623 (Mich. Ct. App. 2006)). Accordingly, the focus is on the mental state of the alleged wrongdoer to determine whether he acted recklessly. Asking a jury to resolve similar claims under two different standards—one objective and the other subjective—would result in more lengthy jury instructions, jury confusion, and inconvenience to the parties that would not be present if the claims were tried separately.

Exercising supplemental jurisdiction over state law claims would thus require additional testimony, evidence, and an inquiry into a defendant officer's mental state at the time of the alleged unreasonable seizure. Additionally, adjudicating the state law claims of gross negligence, false imprisonment, and malicious prosecution in this court would require a jury to understand, distinguish, and apply two distinct standards to otherwise very similar claims, which would lengthen jury instructions and confuse the jury.

### b. Immunity

Plaintiff's state and federal law claims also apply different versions of immunity, a further complication in their being tried together. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a government official is entitled to such qualified immunity, a court must first determine whether a federal right was

violated and, if so, whether that right was "so clearly established that a reasonable official would understand that his particular conduct would violate that right." *Wilkins v. City of Royal Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at * 26 (E.D. Mich. 2005). A court must also determine whether the officer was performing a discretionary function at the time. *Id.* This immunity is relatively straightforward and turns on the objective reasonableness of the official's actions. *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different, as it applies a *subjective* standard of review to the official's actions. Unlike federal qualified immunity, Michigan's governmental immunity statute does not shield officers from liability for intentional torts. *See Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. Ct. App. 1997); Mich. Compl. Laws § 691.1407(3). Unlike the immunity afforded from § 1983 claims, immunity from state torts under Michigan law depends upon an officer's subjective intent at the time of the alleged assault. And, to further complicate the matter, application of this immunity is not a straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a confusing area of the law for the bench and bar of our state for many years and, unfortunately, attempts to explain it have often resulted in increasing the quagmire in which we collectively have found ourselves on this subject.

*Sudul*, 562 N.W.2d at 490 (Murphy, J., dissenting). The differences in the applicability of governmental immunity between Plaintiff's federal and state claims, as well as the "quagmire" that has evolved regarding the application of such immunity to state claims under Michigan law, are additional factors that would complicate the simultaneous trial of federal claims, confuse the jury and inconvenience the parties.

### c. Recoverable Damages

Recoverable damages are drastically different as to Plaintiff's federal and state claims. Under federal law, a successful § 1983 Plaintiff may recover punitive damages against individual defendants. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). In direct contrast, "[i]n Michigan, the courts . . . refuse to allow the recovery of punitive damages." *Fellows v. Superior Prods. Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993) (quoting *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 805 (E.D. Mich. 1989)). As a result, Plaintiff would be entitled to seek punitive damages against the officers for his § 1983 claims but not for the remainder of his claims.

Punitive damages, by definition, "are not intended to compensate the injured party, but rather to punish the tortfeasor." *City of Newport*, 453 U.S. at 266. The jury would be instructed that they *are* permitted to "punish" for an egregious 4th Amendment violation but that they are *not* so permitted for even an obvious violation of state law. This difference could easily lead to an artificially—and unfairly—high award for a proven § 1983 claim in order to "compensate" for the jury's inability to award punitive damages for the state law claims. It could also result in an unfairly low award if the jury were to incorrectly conclude that, since Michigan law does not permit punitive damages, the proven federal claim is not deserving of such an award either. In either scenario, the different treatment of punitive damages under state and federal law could result in jury confusion, lengthy jury instructions, and an unfair verdict.

### d. Compelling Reasons Exist to Dismiss Plaintiff's State Claims

The potential for jury confusion has been identified as a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D.

10

Neb. 1997); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Gasque v. King*, No. 90-00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. 1991); *Barbetta v. Chemlawn Servs. Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *see also* Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3567.1, n.46 (2d ed. 1984). In considering this potential, as well as the interests of economy, convenience, fairness and comity, the court finds that the state claims should be dismissed. To exercise supplemental jurisdiction over these claims would result in confusion, inconvenience, and potentially unfair results given the systematic disparity between these claims, including their various legal standards, potential immunity from suit, and potential recoverable damages. Therefore, the court will dismiss without prejudice the state law claims asserted by Plaintiff.

### 2. This Case Presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not "exceptional." *Executive Software*, 24 F.3d at 1558. Courts agree that the inclusion of the phrase "exceptional circumstances" limits the broad discretion that district courts once entertained under *Gibbs* to deny supplemental jurisdiction in any case. *See, e.g.*, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Executive Software*, 24 F.3d at 1558. However, Congress only "sounded a note of caution" and did not restrict a district court's ability to dismiss claims only in cases that were "ridiculous" or "impractical." *Executive Software*, 24 F.3d at 1558, 1560 (citing *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional

11

circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources.")).

The court finds that exceptional circumstances are present in this case in weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome which could readily result by attempting to resolve all claims in a single trial.  Though there would be some duplication of effort required by Plaintiff and the defense in this case if Plaintiff decides to pursue both the state and federal claims, the court finds that any advantages to be gained by trying all claims together are outweighed by the potential for confusion of the issues, legal theories, defenses, and possible relief.  Thus, the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### B.  Dismissal Pursuant to 28 U.S.C. § 1367(c)(2)

Separately, a district court may decline the exercise of supplemental jurisdiction pursuant to § 1367 if "the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(2).  As already discussed in detail, the state claims presented here implicate myriad problems including the need to introduce evidence inapplicable to—indeed inconsistent with—the evidence relevant to the federal claim, additional witnesses, disparate legal theories, and significantly expanded and contradictory jury instructions.  The court finds that the state claims presented in this case would, for these reasons, predominate over the § 1983 federal claims over which the court has original jurisdiction.  Pursuant to 28 U.S.C.

§ 1367(c)(2), the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

## III. CONCLUSION

Plaintiff's state law claims of gross negligence, malicious prosecution, and false arrest and imprisonment do not have original jurisdiction in federal court. The inclusion of Plaintiff's state claims with Plaintiff's claims under 42 U.S.C. § 1983 could lead to jury confusion, judicial inefficiency, inconvenience to the parties and an unfair outcome. Additionally, these claims would predominate over Plaintiff's § 1983 federal claims. Pursuant to 28 U.S.C. §§ 1367(c)(2) and (4), the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claims. Accordingly,

IT IS ORDERED that all of Plaintiff's state law claims including, without limitation, claims of gross negligence (Count III), claims of malicious prosecution (Count IV) and claims of false arrest and imprisonment (Count V), are hereby DISMISSED WITHOUT PREJUDICE, leaving only Plaintiff's claims arising under federal law through 42 U.S.C. § 1983 (Counts I and II) now remaining before this court.

                                      s/Robert H. Cleland
                                      ROBERT H. CLELAND
                                      UNITED STATES DISTRICT JUDGE

Dated: July 14, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 14, 2010, by electronic and/or ordinary mail.

                                  s/Lisa G. Wagner
                                  Case Manager and Deputy Clerk
                                  (313) 234-5522